THOMAS, ELWYN, Associate Judge.
This litigation originated in the County Judge’s Court of Duval County, Florida.
On 18 September 1947 Riley Andrew Gwynn was appointed guardian of the person and property of Allie McHenry Harvey, incompetent, and on the same day the appointee and the appellant executed a guardian’s bond in the sum of $300,000 payable to the then Governor of Florida and his successors. The following day, upon approval of the bond, letters of guardianship were issued and 18 December 1947 the guardian filed an inventory of the ward’s property, valued at nearly $616,000. The guardian’s annual report was approved 20 September 1948. On 13 April 1949 the ward died and the following month the *716 guardian became executor of the estate. In September 1949 the executor filed an inventory showing that the assets of the estate were worth approximately $608,500, and a few days later he presented to the court his final report as guardian indicating assets of $610,100. The county judge approved the final report 16 December 1949, discharged the guardian and released the surety, appellant, from further liability on the bond.
We should note now that about seven months elapsed between Gwynn’s appointment as executor and his discharge as guardian. On 20 June 1950 appraisers of the estate reported assets of about $592,-000.
The assets listed in the executor’s tax return to the Federal Government, in his final report as guardian, and in the appraiser’s report were approximately the same in value.
Eventually Gwynn was removed as executor of the estate and The Florida National Batik of Jacksonville was appointed administrator. Upon demand of this successor, Gwynn.submitted certain records to the bank’s accountant. It developed that although he had accounted for fiduciary funds in the estate, some withdrawals by him from monies of the guardianship were questioned. At first there was no attempt by the bank to re-open the guardianship proceedings or to hold the surety accountable on its bond and, actually, the bank sought the approval of the court not to pursue such a course. Furthermore the appellee, bank, in its petition for revocation of the orders approving the guardian’s reports and relieving his surety, expressed the opinion that defalcations by Gwynn “involved Estate funds rather than guardianship funds.” Even so, the administrator filed the petition to revoke the order's in the guardianship proceeding evidently in an abundance of caution because the petition to approve its action had not been heard and a different remedy to protect the estate might be lost by the passing of time.'
The county judge by an order entered in the guardianship proceeding, 19 September 1955, revoked the orders of 20 September 1948 and 16 December 1949, approving the annual and final returns and discharging the guardian and his surety. In the same order he “reopened” the returns and set for hearing the question whether or not the guardian had committed defalcations.
The order of 16 December 1949 was not challenged in an appellate court.
Before the matter was heard the United States Fidelity and Guaranty Company, now appellant, filed in the circuit court a petition to review the action of the county judge and the petition was dismissed on the motion of the appellees who were then respondents.
From all appearances the orders of the county judge approving the guardian’s reports and releasing him and the surety were final, and intended to be so, and it is the obvious purpose of this appeal to secure a decision from this court determining whether or not the county judge could, after a lapse of more than five years, disturb these orders.
The appellant in its petition to the circuit court challenged the jurisdiction of the county judge to enter the belated order and claimed it had a vested interest in the order by reason of Sec. 746.14, Florida Statutes 1947, and F.S.A., in which it was provided that such an order of discharge should “operate as a release from the duties of guardianship and as a bar to any suit against said guardian or his surety, unless such suit is commenced within one year from the date of the discharge.”
After careful study of the record we conclude that there is an insurmountable obstacle in the path to a solution of the problem which the litigants present.
It is clear that the appellant invoked the jurisdiction of 'the circuit court to grant a writ of certiorari to effect the quashing of the order of the county judge dated 19 *717 September 1955. The petitioner charged that the essential requirements' of law had not been followed and referred to Rule 2.17 “ ‘1954 Florida Rules of Civil Procedure’ ” 31 F.S.A., dealing with that remedy and to Sec. 11, Article V of the Constitution, F.S.A. The petition contained a specific prayer for a writ of certiorari. The action of the circuit court should, therefore, be judged by the rules regulating the discretionary writ of certiorari.
When the motion to dismiss the petition for certiorari reached the circuit judge he simply ordered that it be granted. The motion was based on only two grounds: that the petitioner had no right to file it, which gives us little information, and the “judgment of the County Judge’s Court * * * [was] not a final judgment.”
Putting together the specific ground of the motion and the circuit judge’s order, we come to the conclusion that he dismissed the •petition for certiorari because the order attempted to be reviewed had not become final, and that he did not pass on the merits of the order.
Doubtless he had in mind the general rule in certiorari procedure that an order will not be reviewed unless it is final, and that the hearing set by the county judge had not been held when he was asked to go into the matter that was to be determined.
We are not inclined to interfere with the order of' dismissal — we are not convinced that the ruling was improper. Moreover, were we to go beyond it and decide the propriety of the county judge’s order, we would, in our opinion, be passing upon a matter that the circuit judge seems not to have considered. We will not undertake to presume what ruling the county judge will eventually make or what decision an appellate court will reach when the validity of the order of 19 September 1955 is properly presented.
We dislike to appear to beg a question, especially one so vigorously presented as the one in this case, but we do not feel that the circuit judge erred or that we should circumvent him by determining at this stage of the litigation the propriety of the county judge’s order.
In ruling this way, we understand that neither the circuit court nor this court has prejudiced the positions of the parties.
Affirmed.
STURGIS, C. J., and WIGGINTON, J., concur.